NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-27

COMMONWEALTH

vs.

JONATHAN TORRES.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a trial in the Superior Court, a jury convicted the defendant of forcible rape of a child, in violation of G. L. c. 265, § 22A, and indecent assault and battery on a child under the age of fourteen, in violation of G. L. c. 265, § 13B.  The defendant appeals from those convictions and from the denial of his motion for a new trial.  We affirm.

Background.  We summarize the evidence the jury could have found, reserving certain facts for later discussion.  When the victim was five years old, she went to live with her mother, her grandmother, some of the victim's siblings, and her mother's boyfriend, Jonathan.  The victim identified the defendant as the father of her younger brother.  She referred to that man as

"Jonathan Montanez" and testified that he lived with them during the entire time she lived with her mother. The victim's brother was born during the time the victim lived in the home. The victim testified that Jonathan Montanez sexually abused her multiple times and told her not to tell anyone. The victim first disclosed the sexual abuse to her mother around seven to eight years after the abuse occurred.

The victim's mother testified that when the victim was five years old, the victim came to Springfield to live with her and her mother and that the defendant also lived in the home. She identified the defendant as the father of the victim's brother. She testified that no other adult named Jonathan lived in the home or visited during the time the victim lived there. When she and her mother both worked, the defendant was the only adult in the home with the children.

At trial, the Commonwealth called Stephanie Block, a psychology professor, as a witness. Block did not review any information about the case and testified that sexual abuse victims may wait to report the abuse, referred to as "delayed disclosure." She also testified about three stages of memory: encoding, storage, and retrieval. She explained that people can remember traumatic events differently, and that research shows that for traumatic events people have a stronger core memory for central details over peripheral details. On cross-examination,

2

defense counsel elicited testimony from Block that she had testified between eighty and ninety times for the prosecution and had never testified for the defense.

On December 8, 2021, after a three-day trial, the jury returned guilty verdicts on both counts against the defendant. On August 2, 2023, the defendant filed a motion for a new trial, arguing that trial counsel was ineffective for failing to consult an expert psychologist. At an evidentiary hearing on the motion for a new trial in June 2024, the defendant called two witnesses, trial counsel and a forensic psychologist, John Daignault. On November 21, 2024, the judge entered an order denying the motion.

Discussion. 1. Sufficiency of evidence of identity. The defendant argues that because the evidence failed to identify the defendant as the perpetrator, no rational trier of fact could conclude beyond a reasonable doubt that the defendant sexually assaulted the victim. We disagree. Where the defendant challenges the sufficiency of the evidence, we summarize the facts the jury could have found, viewing the evidence in the light most favorable to the Commonwealth. See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).

Although the victim never identified the defendant as her abuser and named the man who was her brother's father as "Jonathan Montanez," the Commonwealth may prove identity beyond

3

a reasonable doubt in other ways. See Commonwealth v. Coates, 89 Mass. App. Ct. 728, 731-732 (2016) (jury could draw necessary inferences from circumstantial evidence to determine identity of defendant beyond reasonable doubt where victim failed to identify defendant as person who committed indecent assault and battery).

"Circumstantial evidence is competent to establish guilt beyond a reasonable doubt, . . . and reasonable inferences may be drawn from the evidence." Commonwealth v. White, 452 Mass. 133, 135 (2008). The jury were permitted to consider circumstantial evidence when determining the identity of the abuser. See id. at 136 (reasonable inferences drawn from evidence sufficient to sustain conviction). The jury could infer identity from confirmatory facts or circumstances. See Commonwealth v. Doe, 8 Mass. App. Ct. 297, 300 (1979) ("It is not necessary that any one witness should distinctly swear that the defendant was the man, if the result of all the testimony, on comparison of all its details and particulars, should identify him as the offender" [citation omitted]).

Here, the victim's mother testified that the defendant lived with the victim's family in 2008 and 2009, when the victim was five or six years old, and moved out in 2009. She testified that the defendant was the person who watched her children when she and the victim's grandmother were both at work in the

4

morning.  She also testified that the defendant was the father of the victim's younger brother and identified him in court. The mother's testimony corroborated key details in the victim's own testimony about the victim's relationship with the abuser and the circumstances of the abuse.

The jury could reasonably infer that the victim's attribution of the last name "Montanez" to the defendant was a mistake traceable to "Luis Montanez," which the mother testified was the name of the boyfriend she had after the defendant and lived with "on and off [for] six years."  The mother further testified that the name "Jonathan Montanez" did not mean anything to her.  When the victim first disclosed the abuse to her mother, the victim told her mother that "Jonathan" was the perpetrator without specifying a last name, and the mother testified that she understood the victim meant "Jonathan Torres" and that there was no other Jonathan in the mother's life to whom the victim could have been referring.  Accordingly, we conclude that the jury could reasonably infer from the evidence that the defendant was the perpetrator of the sexual abuse described by the victim.  See Commonwealth v. Brennan, 74 Mass. App. Ct. 44, 47-48 (2009) (direct evidence of identification is not necessary to permit jury to infer that defendant had committed crimes).

5

2. Expert testimony. The defendant contends that the judge erred in allowing Block to testify about the timing of the disclosure of sexual abuse complaints by children and in allowing her to improperly testify about memory. We review the judge's decision to admit expert testimony for an abuse of discretion. Commonwealth v. Hinds, 487 Mass. 212, 218 (2021).

We find unavailing the defendant's contention that Block's testimony impermissibly "opined that any disclosure behavior is consistent with sexual abuse." A trial judge has "broad discretion to determine whether to admit expert testimony." Commonwealth v. Federico, 425 Mass. 844, 847 (1997). Expert testimony about the general behavioral characteristics of sexually abused children, including testimony about delayed disclosure, is permissible within the judge's discretion and with proper limiting instructions to the jury. See Commonwealth v. Dockham, 405 Mass. 618, 630 (1989).

Here, Block testified to different types of disclosure patterns, including lack of disclosure, immediate disclosure, delayed disclosure, partial disclosure, and disclosure followed by recantation. Block did not compare any of these behaviors to the victim's manner of disclosure, nor did she compare the victim to the general behavioral characteristics. See Commonwealth v. Richardson, 423 Mass. 180, 185 (1996) (expert may not refer or compare child to general characteristics). In

6

fact, she did not know any information about the victim's disclosure of sexual abuse in this case. To the extent that Block's testimony about the consistency of various disclosure behaviors with sexual abuse was comprehensive enough that it would "inevitably" apply to the victim, it appears that this aspect of Block's testimony permissibly "did no more than give the jury information . . . [that] a finding [of a particular disclosure behavior] does not exclude that sexual abuse occurred." Commonwealth v. Colon, 49 Mass. App. Ct. 289, 293 (2000).

The defendant contends that Block's testimony that delayed disclosure "is what we see most commonly" was improper because the jury "would inevitably construe this opinion as an endorsement" of the victim's credibility. We disagree. The defendant maintains that this case is similar to Commonwealth v. Montanino, 409 Mass. 500, 503-504 (1991), where the Supreme Judicial Court held that opinion testimony improperly bolstered the victim's credibility where the witness testified that "most" sexual assault victims provided more details about the assault than they initially revealed. This case is distinguishable from Montanino because here, Block discussed several different disclosure patterns and testified that sexual assault disclosures can vary. Block never testified about a typical victim profile and never singled out any of the delayed

7

disclosure factors as more typical or credible than others. See Commonwealth v. Deloney, 59 Mass. App. Ct. 47, 56 (2003) (expert testimony profiling child victim "norm" is impermissible). Moreover, whereas the opinion testimony in Montanino, supra at 502, came from a police officer who was also the "fresh complaint" witness and helped bring charges against the defendant, Block never connected her testimony to the victim's disclosure and she had no knowledge of the case. Contrast Deloney, supra at 59 (expert improperly suggested that events and feelings expressed by witnesses at trial were same as those of other abuse victims).

Similarly, the defendant's contention that Block's testimony about memory was irrelevant and improperly vouched for the victim lacks merit. The defendant argues that Block's testimony about memory "encoding," the effects of trauma on memory, and how people rely on generalizations to recall what they did on particular occasions, was irrelevant because the case did not involve issues of memory lapses or repressed memories. Block's testimony about memory was not extensive and was relevant because it helped the jury understand how memory formation may be affected by traumatic events such as child sexual abuse. It served the permissible purpose of educating the jury about a topic "beyond the jury's common knowledge" and

8

made no connection to the victim's experience.  Commonwealth v. Colin C., 419 Mass. 54, 60 (1994).

Even if we were to accept the defendant's argument that Block's testimony improperly bolstered the victim's credibility, we conclude there was no prejudice.  The risk of undue influence on the jury was relatively small where Block had no relationship to the victim and never connected her testimony to the victim's case.  See Federico, 425 Mass. at 849.  Contrast Commonwealth v. Quinn, 469 Mass. 641, 650 (2014) (finding prejudice from implicit vouching in expert testimony of victim's therapist).  Furthermore, the judge gave limiting instructions to the jury, both in his initial charge and during his final instructions, about expert testimony and emphasized that it was the jury's role to determine the credibility of witnesses.  The judge acted within his discretion in admitting Block's testimony.

3.  Motion for a new trial.  The defendant argues that the judge erred in denying his motion for a new trial because trial counsel was ineffective for failing to consult with a psychological expert.  We are unpersuaded.

A motion for new trial "is addressed to the sound discretion of the trial judge" (citation omitted).  Commonwealth v. Sherman, 451 Mass. 332, 334 (2008).  Where the motion judge was also the trial judge, he was in the best position to assess the credibility of the defendant's motion, supporting

affidavits, and the testimony presented at the hearing.  See Commonwealth v. Miller, 101 Mass. App. Ct. 344, 350 (2022).

It is undisputed that trial counsel did not consult with an expert witness about child sex abuse disclosure and memory even though he knew that Block would be testifying about these topics for the Commonwealth.  Trial counsel sent e-mail messages to six potential expert witnesses, but only one responded and gave no input.  Counsel was frustrated, and as the trial date approached, he sought and obtained several extensions in order to retain an expert psychologist.  The record supports the judge's finding that trial counsel made reasonable efforts to obtain an expert for trial.  See Commonwealth v. Velez, 487 Mass. 533, 547 (2021).

The judge further found that "the defense strategy was to challenge the victim's account and expose inconsistencies" between her descriptions of what happened, and that "[counsel]'s decision to proceed to trial without an expert on suggestibility (including false memories), in all of these circumstances, was

10

reasonable."  Trial counsel was familiar with Block's previous testimony on behalf of the Commonwealth in other cases.

Even if the defendant had demonstrated that trial counsel's failure to obtain an expert psychologist was unreasonable, his argument would still fail under the second prong of Saferian, 366 Mass. at 96.  The judge correctly found that even if an expert psychologist could have educated trial counsel and the jury on false memories and false allegations, "at best, the expert might have made the defense strategy more robust and effective," but the lack of an expert did not deprive the defendant of a substantial defense "where the expert's opinion would not have materially changed the defense theory or contradicted Block's testimony."  See Commonwealth v. Millien, 474 Mass. 417, 432 (2016) (defense is "substantial" where there is "serious doubt whether the jury verdict would have been the same had the defense been presented").

Here, the record fails to demonstrate any serious doubt that the verdict would have been different had trial counsel presented a defense expert to testify about false memory.  As the judge correctly found, Daignault's testimony "did not contradict or raise serious questions about the validity of Block's expert testimony," and both psychologists "discussed memory in non-absolute terms, or general tendencies."  The judge further found that "what Daignault viewed as a deficiency in

11

Block's testimony -- the absence of any discussion that memories are fallible and that time and experiences can affect their accuracy and precision -- is a matter of common knowledge." Moreover, the defense theory at trial was that the abuse never happened.  Trial counsel sought to discredit the victim, pointing out inconsistencies in her descriptions of the abuse and the "different stories" she told.  Accordingly, the defendant suffered no prejudice, and the judge did not abuse his discretion in denying the defendant's motion for a new trial.

<u>Judgments affirmed</u>.

<u>Order denying motion for a new trial affirmed</u>.

By the Court (Walsh, Toone & Tan, JJ.[1]),

Paul Little

Clerk

Entered: April 28, 2026.

---

[1] The panelists are listed in order of seniority.